**McCARTER & ENGLISH, LLP**
Christopher A. Rojao
Ryan A. Savercool
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
(973) 624-7070 FAX
crojao@mccarter.com
rsavercool@mccarter.com

**HOGAN LOVELLS US LLP**
Jon Talotta (*pro hac vice* to be filed)
8350 Broad Street (Boro Tower)
Tysons, VA 22102
Tel: 703.610.6100
jon.talotta@hoganlovells.com

David M. Cheifetz (*pro hac vice* to be filed)
Elizabeth C. Milburn (*pro hac vice* to be filed)
390 Madison Avenue
New York, New York 10017
Tel: 212.918.3000
david.cheifetz@hoganlovells.com
tina.milburn@hoganlovells.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, ET AL., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE LIFETIME VALUE CO. LLC, ET AL. <br><br> *Defendants*. | Civil Action No. _____ <br><br> Removed from the Superior Court of New Jersey, Mercer County, Law Division <br><br> State Court Docket No: MER-L-000272-24 |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendants the Lifetime Value Co. LLC, BeenVerified, Inc., BeenVerified, LLC, NeighborWho LLC, The NumberGuru, LLC, PeopleLooker LLC, PeopleSmart LLC, Ownerly, LLC ("***Defendants***")[1], by and through undersigned counsel, Hogan Lovells US LLP and McCarter & English, LLP, hereby remove this action under the Class Action

---

[1] BeenVerified, Inc. is no longer in existence.

Fairness Act ("**CAFA**"), 28 U.S.C. § 1332(d), 28 U.S.C. §§ 1441(a)-(b), and 28 U.S.C. § 1453, because this is a class action or, alternatively, a mass action, and thus federal jurisdiction is proper.

**NATURE OF THE CASE**

1.     On February 7, 2024, plaintiffs Atlas Data Privacy Corporation ("**Atlas**"), Jane Doe 1, Jane Doe 2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Peter Andreyev, and William Sullivan (collectively, "**Plaintiffs**"), commenced an action against the Lifetime Value Co. LLC, BeenVerified, Inc., NeighborWho LLC, The NumberGuru, LLC, PeopleLooker LLC, PeopleSmart LLC, and Ownerly, LLC, Richard Does 1-10, and ABC Companies 1-10, in the Superior Court of New Jersey, Mercer County, Law Division, entitled *Atlas Data Privacy Corporation, et al. v. The LifetimeValue Co., LLC, et al.*, No. MER-L-000272-24.  Atlas purports to be the assignee for the claims of 19,398 individuals (the "**Assignors**" or "**Covered Persons**") under New Jersey's Daniel's Law, N.J.S.A. 47:1A-1, *et seq*., and N.J.S.A. 56:8-166.1 ("**Daniel's Law**").  The Individual Plaintiffs also purport to be "Covered Persons."

2.     On March 6, 2024, Plaintiffs filed an Amended Complaint, adding BeenVerified, LLC as a defendant.  A true and correct copy of the Amended Complaint is attached hereto as Exhibit 1.

3.     Defendants were served with copies of the Summons, Document Preservation Notice, First Request for the Production of Documents, First Set of Interrogatories, Amended Complaint, Track Assignment Notice, and Case Information Sheet on March 25, 2024.[2]  A true and correct copy of these documents is attached hereto as Exhibits 2-8.

4.     The Summons, Document Preservation Notice, First Request for the Production of

---

[2] However, we note that defendant BeenVerified, LLC has not yet been served with the Amended Complaint.

Documents, First Set of Interrogatories, Amended Complaint, Track Assignment Notice, and Case Information Sheet constitute all process, pleadings, and orders that were served upon Defendants to date.

5.    Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is being filed within thirty (30) days of Defendants' receipt "through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based," thus this removal is timely.[3]

## LEGAL STANDARD

6.    "[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Id.*

7.    "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to simplify the pleading requirements for removal and to clarify that courts should apply the same liberal rules to removal allegations that are applied to other matters of pleading." *Id.* (citation, quotation marks, and brackets omitted). Accordingly, "[a] statement 'short and plain' need not contain evidentiary submissions." *Id.* at 84.

## PARTIES

8.    Plaintiff Atlas is incorporated in Delaware and "with offices at 201 Montgomery

---

[3] By removing this action, Defendants do not waive any available defense or rights (all of which are reserved). Nor do Defendants concede the veracity of any allegation pleaded against them. *See Faltaous v. Johnson & Johnson*, No. CIV.A. 07-1572JLL, 2007 WL 3256833, at *8 (D.N.J. Nov. 5, 2007) ("Defendant need not concede aspects of the complaint in order to prove federal jurisdiction."); *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 398 n.3 (3d Cir. 2004) ("A pretrial ruling on jurisdictional facts should not be made if it constitutes a decision on the merits.").

Street, Suite 263, Jersey City, New Jersey 07302." Am. Compl., ¶ 24.[4] Atlas alleges that it "asserts claims against Defendants as the assignee of the claims of approximately 19,398 individuals who are all 'covered persons' under Daniel's Law[.]" *Id.*, ¶ 25. The Assignors are comprised of "individuals who reside, work or had previously resided or worked in New Jersey, and qualify as 'covered persons' as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law." *Id.*, ¶ 26.

9.      Plaintiff Jane Doe 1's state of citizenship is not set forth in the Amended Complaint.

10.     The Amended Complaint alleges that Plaintiff Jane Doe 2 "lives in Northern New Jersey" (*id.*, ¶ 16). On information and belief, she is a citizen of the State of New Jersey.[5]

11.     Plaintiff Edwin Maldonado's state of citizenship is not set forth in the Amended Complaint.

12.     The Amended Complaint alleges that Plaintiffs Scott Maloney and Justyna Maloney (the "***Maloneys***") "live together in New Jersey" (*id.*, ¶ 18). On information and belief, they are citizens of the State of New Jersey.

13.     Plaintiff Peter Andreyev's state of citizenship is not set forth in the Amended Complaint.

14.     Plaintiff William Sullivan's state of citizenship is not set forth in the Amended Complaint.

15.     Defendants are organized under laws of the State of Delaware with their principal

---

[4] Defendants accept as true (as it must at this stage) the allegations in the Amended Complaint, solely for the purpose of establishing federal jurisdiction. Defendants reserve all rights to dispute all allegations against it in the future.

[5] *Darling v. Piniella*, No. CIV.A. 91-5219, 1991 WL 193524, at *4 (E.D. Pa. Sept. 27, 1991) (finding that although plaintiffs' complaint fails to allege citizenship because it only alleged the residency of the various parties, it was "entirely proper for the court to look beyond plaintiffs' complaint to defendant's Removal Notice").

places of business in New York.

16.    Defendants Richard Does 1-10 and ABC Companies 1-10 are fictitious entities whose citizenship cannot be verified at this time.

## UNDERLYING ALLEGATIONS

17.    Plaintiffs allege that Defendants violated Daniel's Law, Am. Compl., ¶ 8, because 19,398 Assignors, Doe 1, Doe 2, Maldonado, the Maloneys, Andreyev, and Sullivan allegedly asked Defendants to "cease disclosure of their home address and/or unpublished home telephone number." Am. Compl., ¶ 64. Plaintiffs further allege, "Defendants did not cease the disclosure" within ten (10) business days of Plaintiffs' purported notice. *Id.*, ¶¶ 66-67.

18.    Plaintiffs allege that they are entitled to recover from Defendants "actual damages, not less than liquidated damages under Daniel's Law, at '$1,000 per violation,'" along with punitive damages, attorneys' fees, interest (pre- and post-judgment), and litigation costs. *Id.*, ¶ 69(B-D).

19.     Plaintiffs also each allege that they are entitled to "injunctive relief" with respect to the "protected information" of each "Individual Plaintiff[]" and each unnamed "Covered Person[]." *Id.*, ¶ 69(E).

## CAFA "CLASS ACTION" JURISDICTION

20.    Under 28 U.S.C. § 1332(d), a district court has jurisdiction over a "class action" in which: (1) the amount in controversy exceeds the sum or value of $5 million (the "amount in controversy" requirement); and (2) any member of a class of plaintiffs is a citizen of a state different from any defendant (the "minimal diversity" requirement). *Id*. In addition, to be considered a "class action" under CAFA, the suit must be "filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]" 28 U.S.C. § 1332(d)(1)(B).

21.     This action satisfies all of CAFA's requirements for federal jurisdiction over a class action because (1) there is minimal diversity between the parties; (2) the aggregate amount-in-controversy exceeds $5,000,000; (3) the putative class exceeds 100 members; and (4) the suit was filed under a state-law analogue to Rule 23.

### A.     Minimal Diversity

22.     CAFA requires minimal diversity among the parties, meaning, at least one class member must be a citizen of a different state from at least one defendant. 28 U.S.C. § 1332(d)(2).

23.     Under CAFA, unincorporated associations "shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10).  For purposes of determining subject matter jurisdiction under CAFA, "a limited liability company is an 'unincorporated association' as that term is used in 28 U.S.C. § 1332(d)(10) and therefore is a citizen of the State under whose laws it is organized and the State where it has its principal place of business." *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 700 (4th Cir. 2010); *accord Calchi v. TopCo Assocs., LLC*, 676 F. Supp. 3d 604, 612-614 (N.D. Ill. 2023) ("[U]nder the CAFA, the citizenship of an unincorporated association is roughly the same as the citizenship of a corporation. It is a citizen in its state of organization (instead of incorporation), and the state where it has its principal place of business.").

24.     In the Amended Complaint, on information and belief, Plaintiffs allege that, at a minimum, Plaintiffs Jane Doe 2 and the Maloneys are citizens of the State of New Jersey. Am. Compl., ¶¶ 16, 18.  Further, the Amended Complaint alleges that the Assignors are citizens of New Jersey because they "include individuals who reside, work or had previously resided or worked in New Jersey[.]" *Id.*, ¶ 26.

25.     Defendants are each limited liability corporations organized under the laws of Delaware, with principal places of business in New York.  They are therefore each citizens of

Delaware or New York for CAFA purposes.

26.     That the Amended Complaint names twenty unidentified defendants, in addition to the Defendants, *see* Am. Compl., ¶ 43, has no impact on diversity for CAFA purposes. *Dintelman v. Kellogg Co.*, No. CIV. 09-945-GPM, 2010 WL 520284, at *2 n.1 (S.D. Ill. Feb. 12, 2010) ("[B]ecause the CAFA requires only minimal diversity of citizenship the Court does not inquire as to the citizenship of the 1-100 Does named as Defendants [.]").

27.     CAFA's class action minimal diversity of citizenship requirement is therefore satisfied because at least one member of the class of plaintiffs is a citizen of New Jersey that is different from any defendant (Delaware and New York).  *See* 28 U.S.C. § 1332(d)(2)(A).

**B.     <u>Aggregate Amount in Controversy</u>**

28.     CAFA requires that the amount-in-controversy exceed $5,000,000 for the entire putative class in the aggregate, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2).

29.     "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89; *Vaccaro v. Amazon.com.dedc, LLC*, No. CV 18-11852 (FLW), 2019 WL 1149783, at *3 (D.N.J. Mar. 13, 2019) (same principle).[6]

30.     In the Third Circuit, federal jurisdiction is proper "where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," unless "it appears to a legal certainty that the plaintiff cannot recover the jurisdictional

---

[6] Defendants do not concede that they are liable to Plaintiffs for, or that Plaintiffs are entitled to, any amount or other relief alleged in the Amended Complaint. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."); *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.")).

amount." *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007) (emphasis in original).

       *i.*     *Actual Damages*

31.     In the Amended Complaint, Plaintiffs seek to recover, among other things, "actual damages, not less than liquidated damages under Daniel's Law, at '$1,000 for each violation[.]'" Am. Compl., ¶ 39(B); *see also id..*, ¶ 56 (citing Part 3(c)(1)).

32.     According to the Amended Complaint, Defendants allegedly did not comply with Daniel's Law with respect to the rights of each of the 19,398 Assignors, Doe 1, Doe 2, Maldonado, the Maloneys, Andreyev, and Sullivan. *See, e.g.*, *Id.*, ¶¶ 24-35. That means, as to Defendants alone, the Amended Complaint seeks to recover for 19,405 alleged statutory violations valued at $1,000 each, totaling $19,405,000 in "actual" damages.

33.     In addition to Defendants, Plaintiffs brought this suit against "Richard Roes 1-10 and ABC Companies 1-10," *see Id.*, ¶ 43—totaling 27 defendants, including Defendants. Thus, according to the Amended Complaint, each of the 19,405 individual claims in the Amended Complaint seeks to recover "not less than" $1,000 in damages from each of the 27 Defendants. Put differently, the Amended Complaint alleges 523,935 total monetary claims, valued (according to Plaintiffs) at $1,000 per violation.

34.     Thus, the total "actual" damages amount alleged in the Amended Complaint clearly exceeds the $5,000,000 threshold for the aggregate amount-in-controversy.

       *ii.*    *Punitive Damages*

35.     The Amended Complaint also seeks punitive damages, which contribute to the aggregate amount-in-controversy. *Id.*, ¶ 69(C).

36.     "When determining the amount in controversy, punitive damages . . . are part of the amount in controversy calculation." *Atl. Util. Trailer Sales Inc. v. Harco Nat'l Ins. Co.*, No. CV 20-02349, 2020 WL 3287129, at *2 (D.N.J. June 18, 2020) (citing *Frederico*, 507 F.3d at 199

("[Plaintiff] is seeking punitive damages, which we must consider when calculating the amount in controversy.")).

37.    "Under New Jersey law, punitive damages are capped at 'five times the liability of that defendant for compensatory damages or $350,000, whichever is greater.'" *Harco*, 2020 WL 3287129, at *2 (quoting N.J. Stat. Ann. § 2A: 15-5.14 (2014)). "For purposes of the amount in controversy calculation, courts assume this maximum 'five times' multiplier." *Harco*, 2020 WL 3287129, at *2 (citing *Frederico*, 507 F.3d at 199).

38.    As explained above and as set forth in the Amended Complaint, each of the 19,405 claims alleged could result in an award of "actual damages, [] not less than liquidated damages computed at the rate of $1,000 for each violation of this act[.]" Am. Compl., ¶ 56 (quoting Part 3(c)(1)).

39.    According to the Amended Complaint, Daniel's Law authorizes punitive damages in certain circumstances. Am. Compl., ¶ 56 (quoting Part 3(c)(2)). For amount-in-controversy purposes, the "maximum 'five times' multiplier" reflects the possibility of punitive damages in the amount of five times the amount of actual damages, or an additional $5,000 per claim.

40.    Thus, the actual damages ($1,000) and corresponding punitive damages ($5,000) could total $6,000 for each claim, according to the allegations in the Amended Complaint. Each claim was brought against 27 Defendants (multiply $6,000 times 27 Defendants), resulting in potential actual and punitive damages of $162,000 for each Plaintiffs' claim.

41.    Further, the Amended Complaint alleges that it involves the claims of 19,405 individuals. Multiplied by $162,000 per claim, the aggregate actual and punitive damages alleged in the Amended Complaint far exceed $5,000,000.

*iii.    Attorneys' Fees*

42.    The Amended Complaint also seeks attorneys' fees, which further contribute to the

aggregate amount-in-controversy. Am. Compl., ¶ 69(D).

43.     "When determining the amount in controversy, . . . attorney's fees are part of the amount in controversy calculation." *Harco*, 2020 WL 3287129, at \*2 (citing *Frederico*, 507 F.3d at 199). The Third Circuit has awarded attorneys' fees of 30% of a class judgment. *See Frederico*, 507 F.3d at 199 (noting that, in determining whether the CAFA threshold has been met, "[f]ees could be as much as thirty percent of the judgment"). Thus, the addition of attorneys' fees to the amount-in-controversy increases the amount for actual and punitive damages by another 30%.

44.     For example, as to just the actual damages estimated at $1,000, multiplied by 19,405 claims, the corresponding attorneys' fees valued at 30% of a class action judgment would total $5,821,500.

     *iv.*    *Injunctive and Equitable Relief*

45.     Plaintiffs also seek equitable relief in the Amended Complaint, including a permanent injunction compelling compliance with Daniel's Law and "the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law." Am. Compl., ¶69(E), (F). These additional costs would further increase the amount-in-controversy above the $5,000,000 threshold.

46.     For all the foregoing reasons, it is evident based on the Amended Complaint's allegations, and reasonable extrapolations therefrom, that the $5,000,000 aggregate amount-in-controversy requirement is satisfied in this matter.

**C.**    **Class Action Numerosity**

47.     CAFA requires that "the number of members of all proposed plaintiff classes in the aggregate" must be at least 100 members. 28 U.S.C. § 1332(d)(5)(B). In counting such members, "the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D).

48.     "[T]he Third Circuit found that partial assignees can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 06-0620, 2020 WL 5211035, at *10 (E.D. Pa. Sept. 1, 2020) (citing *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 251-52 (3d Cir. 2016)).

49.     Here, the proposed class consists of 19,398 members—Atlas as assignee for 19,398 Assignors, Doe 1, Doe 2, Maldonado, the Maloneys, Andreyev, and Sullivan. Thus, the number of proposed class members exceeds the 100 members necessary to satisfy the numerosity requirement for the purposes of CAFA jurisdiction.

### D.    This Is A "Class Action" Within The Meaning of CAFA

50.     Under CAFA, "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]" 28 U.S.C. § 1332(d)(1)(B).

51.     The analogous state law need not be pled in the complaint to satisfy CAFA. That is because, if courts "interpreted 'any civil action filed under Rule 23' or a state-law analogue to refer only to cases that specifically mention Rule 23 or a state-law analogue," then "a plaintiff could avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute under which she proceeds." *Williams v. Employers Mutual Casualty Co.*, 845 F.3d 891, 901 (8th Cir. 2017). "[A]llowing class-action plaintiffs to avoid federal jurisdiction simply by omitting explicit reference to the class-action rule they intend to proceed under would promote the kind of procedural gaming CAFA was enacted to prevent." *Id.*; *Badeaux v. Goodell*, 358 F. Supp. 3d 562, 567 (E.D. La. 2019) ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class

action.").

52.      Accordingly, "[i]f a complaint does not satisfy CAFA's jurisdictional requirements on its face, [courts] must cut through any pleading artifice to identify whether the case is ***in substance*** an interstate class action." *Erie Insurance Exchange*, 68 F.4th at 819 (emphasis added). The U.S. Supreme Court has warned "that courts must be careful not to 'exalt form over substance' when determining whether a case satisfies CAFA's jurisdictional requirements.'" *Id.*, at 819-20 (quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)).

53.      Here, the Amended Complaint is "in substance a class action, . . . notwithstanding [Plaintiffs'] artificial attempt to disguise the true nature of the suit." *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013) (denying remand under CAFA where plaintiff, an assignee of class rights, unsuccessfully attempted to omit reference to Rule 23 in the pleadings to avoid federal jurisdiction).

54.      In the Amended Complaint, Plaintiffs allege that Atlas is an assignee of 19,398 Assignors. *See*, *e.g.*, Am. Compl., ¶ 25. Under Daniel's Law, a "covered person's assignee . . . may bring a civil action in the Superior Court." N.J.S.A. § 56:8-166.1(b).[7] An "[a]ssignee" under Daniel's Law "means a person or entity to whom or which an authorized person has assigned, in writing, a covered person's right to bring a civil action for a violation of subsection a. of this section." N.J.S.A. § 56:8-166.1(d).

55.      Plaintiffs' decision not to cite a Rule 23-analogue in the Amended Complaint does not "disguise the true nature of the suit." *Addison Automatics*, 731 F.3d at 742.

---

[7] Courts have held that "starting a legal proceeding in one court does not mean that the party has a right to permanently keep that proceeding in that chosen court." *Aspen Am. Ins. Co. v. Blackbaud, Inc.*, 624 F. Supp. 3d 982, 992 (N.D. Ind. 2022). Thus, even if Atlas can "bring" a claim in Superior Court, N.J.S.A. § 56:8-166.1(b), it "does not necessarily have a right to keep the suit in that court." *Aspen*, 624 F. Supp. 3d at 992.

56.     Atlas can only bring this suit in its capacity as the assignee for the claims of 19,398 Assignors. *See* N.J.S.A. §§ 56:8-166.1(b) and (d). In that capacity, Atlas purports to bring claims on behalf of 19,398 individuals (numerosity), *see supra* ¶¶ 47-49; alleges commonality among the claims (*see* Am. Compl., ¶¶ 50-62 ("Facts Common to All Counts")); and purports to present this case as one in which joinder of nearly 20,000 is not impracticable or impossible.[8] Further, although Plaintiffs do not cite any joinder rule, the Amended Complaint does not demonstrate how Plaintiffs could join 19,398 claims in a single suit, absent the class action mechanism.

57.     Courts have held that a state-law analogue statute or rule is, in effect, a class action, where the rule "resembles" an analogue of Rule 23. *See Pac. Coast Fed'n of Fishermen's Associations, Inc. v. Chevron Corp.*, No. 18-CV-07477-VC, 2023 WL 7299195, at *1-3 (N.D. Cal. Nov. 1, 2023) ("The complaint thus pleads a representative action authorized by section 382 of the California Code of Civil Procedure," which "allows a plaintiff to sue and seek relief on behalf of absent parties," and thus "resembles a damages class action under Rule 23 of the Federal Rules of Civil Procedure.").

58.     Thus, all of the requirements for CAFA jurisdiction over a class action have been met.

### E.    Mass Action Requirements Under CAFA

59.     In the alternative, or in addition, to finding that this is a class action under CAFA, removal is proper because the instant case is a "mass action" under CAFA.

60.     CAFA defines a "mass action" as:

any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact,

---

[8] Defendants do not concede that Plaintiffs established any element of class certification.

except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [§ 1332(a)].

28 U.S.C. § 1332(d)(11)(B)(i). In short, "mass actions are deemed to be class actions removable under 28 U.S.C. § 1332(d)(2)-(10) if they otherwise meet the provisions of those paragraphs." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 319 (3d Cir. 2022) (citing 28 U.S.C. § 1332(d)(11)(A)).

61.     Thus, federal jurisdiction exists under CAFA for a mass action that satisfies (1) the class action requirements of (a) minimal diversity and (b) the $5,000,000 *aggregate* amount-in-controversy; (2) numerosity for a mass action; and (3) the $75,000 *individual* amount-in-controversy requirement.

### i.     Class Action Requirements

62.     "[U]nder § 1332(d)(11), a mass action 'will be treated as a class action for jurisdictional purposes. Thus, if such a civil action met the other diversity jurisdictional prerequisites set forth for class actions in [CAFA], that civil action would be subject to federal jurisdiction.'" *OptumRX*, 43 F.4th at 324 (quoting S. Rep. No. 109-14 at 46 (2005)).

63.     As explained above, there is minimal diversity between the parties, *see supra* ¶¶ 22-27, and the aggregate amount-in-controversy exceeds $5,000,000, *see supra* ¶¶ 28-46. Thus, the class-action requirements for mass actions under CAFA are satisfied.

### ii.    Mass Action Numerosity

64.     Under CAFA, "the term 'mass action' means any civil action . . . in which **monetary relief claims of 100 or more persons** are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact[.]" 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).

65.     "The question is not whether 100 or more plaintiffs answer a roll call in court, but

whether the '*claims*' advanced by 100 or more persons are proposed to be tried jointly." *Bullard v. Burlington N. Santa. Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) (emphasis added). "Where a single complaint joins more than **100 separate claims** involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial." *Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 329 (3d Cir. 2017) (emphasis added).

66.    Here, Atlas alleges that it is the assignee for "monetary relief claims of 100 or more persons," 28 U.S.C. § 1332(d)(11)(B)(i)—specifically, the "monetary relief claims" of 19,398 Assignors. *See* Am. Compl., ¶ 25. In addition, Jane Doe 1, Jane Doe 2, Maldonado, the Maloneys, Andreyev, and Sullivan also each allege "monetary relief claims" and thus add seven additional such claims to the mass-action numerosity calculus.

67.    In the Third Circuit,

[i]t is blackletter law that "the assignee steps into the shoes of the assignor." 29 Williston on Contracts § 74:56 (4th ed. 1999) ("Simply stated, the assignee steps into this pair of the assignor's shoes absolutely, and, if the shoes are dirty, then that dirt sullies the assignee no less than it did the assignor."). As a result, "[a]n assignee's right against the obligor is subject to all ... defenses thereto...." Restatement (First) of Contracts § 167(1) (1932). These defenses include not only defenses to the merits of the claim, but defenses based on where and how the claims may be prosecuted.

*Winn-Dixie Stores, Inc.*, 2020 WL 5211035, at *11.

68.    Accordingly, "the Third Circuit found that partial assignees can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement." *Id.*, at *10 (citing *In re Modafinil Antitrust Litigation*, 837 F.3d at 251-52); *In re Modafinil*, 837 F.3d at 251, as amended (3d Cir. Sept. 29, 2016) ("[P]artial assignees are appropriately considered to be members of a class."); *see also id.* at 252 ("*Fine Paper Litigation* [, 632 F.2d 1081, 1089 (3d Cir. 1980)] envisioned the class action mechanism as a proper tool for partial assignees to participate in the lawsuit [.]").

69.     This case does not involve one plaintiff suing on behalf of a group of unnamed individuals. *See*, *e.g.*, *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014) (involving *parens patriae* action brought by state attorney general on behalf of state's citizens); *Erie Insurance Exchange*, 68 F.4th at 818 (involving unincorporated association bringing suit "to benefit all members of" the association).

70.     Rather, in this case, Atlas brings each claim for relief on behalf of 19,398 separate, allegedly identified Assignors, *see*, *e.g.*, Am. Compl., ¶ 62, along with eight additional individuals, *id.*, ¶¶ 24-35. More precisely, Atlas only has standing to sue (if at all) in its alleged capacity as the assignee for each individual Assignor. Because Atlas "steps into the shoes of" each Assignor in this suit, 29 Williston on Contracts § 74:56, Atlas's "right against" any Defendant is "subject to all defenses" that any Defendant may have had against any Assignor, including "defenses based on **where** and **how** the claims may be prosecuted." *Winn-Dixie Stores*, 2020 WL 5211035, at *11 (citing Restatement (First) of Contracts § 167(1) (1932)) (ellipses omitted; emphasis added).

71.     That Atlas did not name each of the 19,398 Assignors in the case caption does not change the fact that Atlas is not suing on its individual behalf, but is entitled to bring each claim alleged in the Amended Complaint only as the assignee for a corresponding and specific Assignor.[9]

72.     Thus, because Atlas is suing to recover for the "monetary relief claims of 100 or more persons" in a single lawsuit, 28 U.S.C. § 1332(d)(11)(B)(i), the mass-action numerosity element is satisfied.

### iii.     Individual Amount-in-Controversy

73.     CAFA's plain language states that "'jurisdiction shall exist only over those

---

[9] Defendants recognize that it may have been appropriate for Plaintiffs to file their pleading under seal, had Plaintiffs chosen to expressly list the Assignors, but Plaintiffs declined to take such protective measures here. *See*, *e.g.*, L. Civ. R. 5.3.

plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a) [of more than $75,000].'" *Haley v. AMS Servicing, LLC*, No. CIV. 13-5645 (FSH) (JBC), 2014 WL 2602044, at *4 (D.N.J. June 11, 2014) (quoting 28 U.S.C. § 1332(d)(11)(B)(i)).

74.    Courts interpreting this requirement have held that federal jurisdiction exists in a mass action under CAFA where "Defendants have shown that ***at least one*** individual has a claim where the amount in controversy is greater than $75,000." *Haley*, 2014 WL 2602044, at *4-5 (emphasis added) ("Defendants have also shown that some number of individual Plaintiffs place greater than $75,000 at issue. Thus, there is CAFA jurisdiction over this action; Plaintiffs' motion to remand the action is denied.").

75.    Here, Atlas claims an entitlement to the proceeds of more than 19,000 unnamed Covered Persons.  Thus, the amount in controversy as to Atlas far exceeds the $75,000 amount in controversy for purposes of CAFA mass action jurisdiction.

76.    Moreover, ***each*** alleged claim by an Assignor appears to exceed $75,000. As discussed above, the Amended Complaint alleges that each of the 19,398 Assignors' rights were violated by each of the 27 Defendants under Daniel's Law. Thus, at a minimum, the Amended Complaint alleges that each Assignor's claim warrants recovery of up to $1,000 in "actual" damages as to each of the 27 Defendants (*i.e.*, $27,000 in statutory damages per Assignor).

77.    Also as explained above, claims for "punitive damages are capped at 'five times the liability of that defendant for compensatory damages or $350,000, whichever is greater.'" *Harco*, No. CV 20-02349, 2020 WL 3287129, at *2 (quoting N.J. Stat. Ann. § 2A:15-5.14). "For purposes of the amount in controversy calculation, courts assume this maximum 'five times' multiplier." *Id.* (citing *Frederico*, 507 F.3d at 199).

78.    Thus, for each claim by each Assignor against each Defendant, the Amended

Complaint seeks $1,000 in compensatory damages plus $5,000 in punitive damages. Six thousand dollars multiplied by each of the 27 Defendants means each Assignor's claim is valued at $162,000 for statutory damages and punitive damages alone. Moreover, as explained above, the Amended Complaint seeks attorneys' fees and injunctive relief, which further increases the individual amount-in-controversy for each alleged claim. *See supra* ¶¶ 42-46.

79.    Defendants reserve the right to object to the damages sought by Plaintiffs, and dispute that Plaintiffs are entitled to recover any damages. Nevertheless, based on a fair reading of the allegations in the Amended Complaint, the amount in controversy exceeds $75,000, exclusive or interests and costs and therefore, satisfies the amount in controversy requirement under 28 U.S.C. § 1332(a).

### F.    None of the CAFA Exceptions Apply

80.    CAFA provides two mandatory exceptions and one discretionary exception to the application of federal jurisdiction for class actions. 28 U.S.C. § 1332(d)(3)-(4). None of these exceptions applies here.

81.    Each CAFA exception requires, as a starting point, an in-state defendant. 28 U.S.C. § 1332(d)(3)-(4) (requiring either "significant relief" to be sought from an in-state defendant (local controversy exception), or requiring the "primary defendant" to be an in-state one ("home state" and discretionary exceptions)).

82.    Here, as shown above, Defendants are not citizens of New Jersey, and the citizenship of the unidentified defendants is disregarded, so none of the CAFA exclusions apply. *See supra* ¶¶ 15-16.

83.    Further, none of the exceptions for federal jurisdiction over a "mass action" apply here. 28 U.S.C. § 1332(d)(11)(B)(ii). Specifically, none of the claims herein were joined upon motion of a defendant (subsection II), the claims are not asserted on behalf of the general public

(subsection III), and the claims in the Amended Complaint have not been consolidated or coordinated solely for pretrial proceedings (subsection IV).

84.    In addition, the claims in this action do not arise from a single "event or occurrence" in New Jersey that allegedly resulted in injuries in New Jersey or in States contiguous to New Jersey (subsection I). Rather, first, the Amended Complaint alleges that "***each*** of the Individual Plaintiffs and all of the Covered Persons [*i.e.*, the Assignors] . . . sent Defendants written nondisclosure requests (via email)[,]" Am. Compl., ¶ 57 (emphasis added), amounting to 19,398 separate alleged events or occurrences. Second, Defendants did not receive any alleged "notification" in New Jersey (as Defendants are not citizens of New Jersey), and thus no "event or occurrence" took place in New Jersey. Third, the Assignors include individuals who "had previously resided or worked in New Jersey[.]" *Id.*, ¶ 26. Thus, because these individuals previously resided (but no longer reside) in New Jersey, the alleged notifications were not all sent *from* New Jersey. Thus, this exception does not apply either.

85.    Accordingly, none of the class or mass action exceptions to CAFA jurisdiction apply here.

### G.    <u>All Other Removal Requirements Have Been Met</u>.

86.    Attached hereto as <u>Exhibits 2-8</u> are "a cop[ies] of all process, pleadings, and orders served upon" Defendants in this action. 28 U.S.C. § 1446(a).

87.    This Court is part of the district and division within which this action was filed. 28 U.S.C. § 1446(a).

88.    The remaining defendants need not consent to removal for removal to be proper. *Brown v. Jevic*, 575 F.3d 322, 327 (3d Cir. 2009) ("[U]nder CAFA, [] Congress provided that a single defendant may remove an action without the consent of other defendants. *See* 28 U.S.C. § 1453(b).").

89.    Promptly after filing this Notice of Removal, Defendants shall cause a true and correct copy of the same to be filed with the Clerk of the Court for the Superior Court of New Jersey, Mercer County, where the case was filed, pursuant to 28 U.S.C. § 1446(d), along with a Notice of Filing of Notice of Removal, a copy of which is attached hereto as Exhibit 9.

WHEREFORE, for all the foregoing reasons, Defendants respectfully request this Court to assume full jurisdiction over this action as provided by law.

Dated:  April 11, 2024          By:    */s/ Christopher A. Rojao*
**McCarter & English LLP**
Christopher A. Rojao
Ryan A. Savercool
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
(973) 624-7070 FAX
crojao@mccarter.com
rsavercool@mccarter.com

**HOGAN LOVELLS US LLP**
Jon Talotta (*pro hac vice* to be filed)
8350 Broad Street (Boro Tower)
Tysons, VA 22102
Tel: 703.610.6160
jon.talotta@hoganlovells.com

David M. Cheifetz (*pro hac vice* to be filed)
Elizabeth C. Milburn (*pro hac vice* to be filed)
390 Madison Avenue
New York, New York 10017
Tel: 212.918.3000
david.cheifetz@hoganlovells.com

## CERTIFICATE OF SERVICE

On this day I caused a true and correct copy of the within and foregoing Defendants to be served by filing a copy of same with the Clerk of Court using the CM/ECF system and emailing such filing to all counsel of record in this matter.

This 11th day of April, 2024.

*/s/ Christopher A. Rojao*